UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MITCHELL WASILEWSKI,**
on behalf of himself and all other persons
similarly situated, known and unknown,
        Plaintiff,

vs.

Case No:
Hon.
Magistrate Judge

**SILVERSTAR DELIVERY LTD,** an
Illinois for-profit company, **GOLD
STANDARD TRANSPORTATION,
INC.**, an Illinois for-profit company, and
**AMAZON.COM, LLC**, a Delaware for-
profit company,
        Defendants.

_____/

Bryan Yaldou (P70600)
LAW OFFICES OF BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
Phone: (734) 692-9200
Fax: (734) 692-9201
Bryan@yaldoulaw.com
*Attorneys for Plaintiff*

_____/

## **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

   NOW COMES Plaintiff Mitchell Wasilewski ("Plaintiff Wasilewski"), by and

through his attorneys, The Law Offices of Bryan Yaldou, PLLC, and for his

Complaint against Silverstar Delivery, LTD ("Defendant Silverstar"); Gold

Standard Transportation, Inc. ("Defendant Gold Standard"); and Amazon.com, Inc. ("Defendant Amazon"), and hereby alleges the following:

## INTRODUCTORY STATEMENT

1.     This is a civil action seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Michigan Workforce Opportunity Act ("WOWA"), MCL § 408.411 *et seq.* Plaintiff is a former employee of Defendants whose rights under these statutes have been violated and he now seeks to recover the benefits due to him from Defendants under the FLSA and the WOWA as a result of Defendants' failure to pay at least the minimum wage for all hours worked and overtime wages to Plaintiff.

2.     Plaintiff seeks a declaration that his rights under the FLSA and the WOWA have been violated, an award of the unpaid wages owed to him, an award of liquidated damages in an amount equal to the unpaid wages owed to him, and an award of reasonable attorney's fees and costs, as provided for in the FLSA and the WOWA, in order to compensate him for damages suffered and to ensure that he and future employees will not suffer as a result of such illegal conduct on the part of Defendants in the future.

## JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.     This Court has supplemental jurisdiction over Plaintiff's state law claims under the WOWA, pursuant to 28 U.S.C. § 1367, because these claims are so related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a) and § 1391(b), because Plaintiff worked for Defendants in this District and suffered the damages at issue in this District, Defendants have significant business contacts within this District, and because the actions and events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6.     Plaintiff is an adult citizen of the State of Michigan, who resides in this judicial district.

7.     Plaintiff worked as delivery driver for Defendants' for-profit businesses in this judicial district.

8.     Defendant Silverstar is a for-profit Illinois company with its main office at 13756 S. Kildare Ave. Crestwood, IL 60445.

9.     Defendant Silverstar has significant contacts with this judicial district because it operated or operates a transportation and logistics business in this judicial district.

10.     Defendant Gold Standard is a for-profit Illinois company with its main office at 13756 S. Kildare Ave. Crestwood, IL 60445.

11.     Defendant Gold Standard has significant contacts with this judicial district because it contracted out work to businesses in this district and/or employed drivers in the transportation and logistics business in this judicial district.

12.     Defendant Amazon is a Delaware Limited Liability Company.

13.     Defendant Amazon is one of the largest internet retailers in the world and does a significant amount of business in this judicial district.

## NATURE OF THE SUIT

14.     Defendant Amazon offers a range of products and services through its websites. The company's products include merchandise and content that it purchases for resale from vendors and those offered by third-party sellers. Defendant Amazon is renowned for its extremely fast delivery of products ordered through its website, www.amazon.com.

15.     In order to provide fast delivery to customers throughout the United States, Amazon has engaged subcontracting companies to hire and oversee delivery drivers for the purpose of delivering its packages to its retail customers.

16.     Upon information and belief, Defendant Amazon contracts with Defendant Gold Standard in order to either obtain delivery driving services or to oversee the delivery driving process or both throughout its warehouses.

4

17.     Defendant Silverstar is a company that hires delivery drivers to service Defendant Amazon's warehouses. Upon information and belief, either Defendant Amazon or Defendant Gold Standard or both Defendant Amazon and Defendant Gold Standard contract with Defendant Silverstar to obtain delivery drivers for Defendant Amazon.

18.     Plaintiff Wasilewski was a delivery driver in this fissured employment scheme.

19.     One of the most significant issues in this case is the status of Defendant Amazon and Defendant Gold Standard as joint employers. Defendant Amazon uses a corporate structure which is commonly referred to as the "fissured workplace." (Exhibit B). Plaintiff's complaint is a part of a movement challenging the fissured workplace scheme that often causes American workers to be denied their rights under the FLSA. *See, e.g., Hall v. DIRECTV, LLC,* 846 F.3d 757, 772 (4th Cir. 2017). In recent years, the employment relationship between workers and businesses receiving the benefit of their labor has fissured apart as companies have contracted out or otherwise shed activities to be performed by other businesses. (Exhibit B). The blurred lines from the fissured workplace make achieving compliance with the wage and hour laws a difficult task. *Id.* Intense competition between subcontracting companies leads to low pay and noncompliance pulls down standards for all. These falling standards make it difficult for responsible employers to survive in low

5

margin, fiercely competitive conditions. *Id.* The costs in this race to be the lowest bidder are ultimately borne by workers deprived of their wages and their rights. *Id.*

20.     The question of whether two or more entities can be joint employers is not new. While the FLSA does not expressly reference "joint employment," the Department of Labor's first set of regulations implementing the statute – which remain in force – recognizes that, "[a] single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938 . . . [I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that *employment by one employer is not completely disassociated from employment by the other employer(s)*, all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." 29 C.F.R. § 791.2(a) (emphasis added).

21.     The U.S. Supreme Court has long recognized that two or more entities may constitute joint employers for purposes of the FLSA. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724-25 (1947); *Falk v. Brennan*, 414 U.S. 190 (1973).

22.     Additionally, courts within the Eastern District of Michigan have also recognized joint employment doctrine in the FLSA context. *Ali v. Piron, LLC*, No.

6

17-11012, 2018 U.S. Dist. LEXIS 37108 (E.D. Mich. Mar. 7, 2018) (Exhibit F);

*Parrott v. Marriott Int'l, Inc.*, No. 17-10359, 2017 U.S. Dist. Lexis 144277, 2017

WL 3891805 (E.D. Mich. 2017) (Exhibit I); and *Dowd v. DirectTV, LLC,* No. 14-

14018, 2016 U.S. Dist. Lexis 36, 2016 WL 28866 (E.D. Mich. 2016) (Exhibit H).

23.     Plaintiff Wasilewski similarly intends to prove in this litigation that he

was jointly employed by Defendants; was entitled to the overtime protections of the

FLSA; was entitled to the minimum wage and overtime wage protections of the

WOWA; and is owed damages for Defendants' willful violations of both the FLSA

and the WOWA.

**STATEMENT OF MATERIAL FACTS**

24.     Defendant Silverstar is a subcontracting company that, upon

information and belief, contracted with Defendant Amazon and/or Defendant Gold

Standard to provide driving and delivery services to Defendant Amazon's retail

customers and to local post offices.

25.     Upon information and belief, Silverstar and Gold Standard have a

substantial business relationship.

26.     Silverstar and Defendant Gold Standard share their main office space,

located at 13756 S. Kildare Ave. Crestwood, IL 60445. (Exhibit C,

http://gstransinc.com/contact-us/ (last accessed Jun. 18, 2018)) and (Exhibit D,

https://forwardp.wufoo.com/forms/zn4xggh0ouu82q/ (last accessed Jun. 18, 2018)).

27.     Upon information and belief, Silverstar and Gold Standard share a human resources department and personnel. (Exhibit A). Plaintiff knows that Silverstar and Gold Standard share a human resources department because he had a pay issue in which he attempted to contact the human resources department for Silverstar, but ended up talking with a woman who worked for both Silverstar and Gold Standard. The first day Plaintiff was supposed to receive a paycheck, his check was not received through the direct deposit system. *Id.* Plaintiff was concerned that he was not going to get paid and therefore called the human resources department in Chicago, IL. *Id.* The human resources employee told Plaintiff that she worked for both Silverstar and Gold Standard and she was able to help Plaintiff resolve his pay issue. *Id.* The human resources woman explained Silverstar and Gold Standard's business relationship to Plaintiff, which to Plaintiff it sounded like Gold Standard was a parent company of Silverstar. *Id.*

28.     Additionally, Gold Standard advertises positions with Silverstar and recruits        workers        for        Silverstar.        (Exhibit        E, https://www.facebook.com/goldstandardtrucking/posts/1284817824879980    (last accessed Jun. 18, 2018).

29.     Plaintiff found out about the position as a delivery driver from an advertisement online. (Exhibit A, ¶ 3).

30.    Plaintiff filled out an application online and was contacted by a man named John from Chicago, IL. (Exhibit A, ¶ 4 – 5). It is unclear whether John worked for Silverstar, Gold Standard, or both Silverstar and Gold Standard.

31.    John arranged a meeting between Plaintiff and a man named Kou at the Amazon warehouse in Brownstown, MI. (Exhibit A, ¶ 6). Kou worked as a manager for Silverstar.

32.    Kou told Plaintiff that the delivery driver position paid $140.00 per day on the week days and $165.00 per day on the weekends. (Exhibit A, ¶ 7). Kou told Plaintiff that delivery drivers did not work more than 10 hours a day and that the pay would be at least $14.00 per hour on the week days and $16.50 per hour on the weekends. *Id.*

33.    Plaintiff filled out W-2 documents, a direct deposit form, and a waiver necessary for using Amazon's "Rabbit" handheld device. (Exhibit A, ¶ 11). He sent the information to a woman who worked in the Human Resources department in Chicago, IL. *Id.*

34.    After Plaintiff accepted the job with Silverstar, Silverstar required Plaintiff to watch an instructional video created by Amazon about becoming a delivery driver for Amazon. (Exhibit A, ¶ 12). The video gave drivers instructions on what to expect in the new position including information about Amazon's policies and operations. *Id.*

9

35.     Plaintiff generally worked five or six days a week and worked between 60 hours and 80 hours a week. (Exhibit A, ¶ 16). The typical day took between 12 and 14 hours, with some days taking as long as 18 hours. *Id.*

36.     Plaintiff would pick up his truck from Silverstar dispatchers in the lot next to the Amazon warehouse at 5:30 a.m. before each shift. (Exhibit A, ¶ 9, 20). Silverstar dispatchers would assign the drivers a route number and a dock number to pick up their packages for the day. (Exhibit A, ¶ 25). At that time, Silverstar would also give the drivers the Rabbit device. (Exhibit A, ¶ 26). The Silverstar dispatchers wore Amazon shirts and drivers were required to wear Amazon hats. (Exhibit A, ¶¶ 22, 24).

37.     Plaintiff picked up his packages to deliver for the day at the Amazon warehouse. (Exhibit A, ¶¶ 27 – 30). Plaintiff was required to wear an Amazon I.D. badge to enter the facility and clocked-in using a hand scanner (Exhibit A, ¶¶ 23, 27 – 28).

38.     Amazon Rabbits are handheld devices which were used by delivery drivers for delivering packages to Amazon's customers. (Exhibit A, ¶¶ 31 – 34). To use the Rabbit, drivers entered their credentials, which included an e-mail address and a password. *Id.* From there, their routes would be uploaded. *Id.* The Rabbit acted as a GPS, telling the drivers exactly where to go to drop off each package. *Id.* Once at the location, the driver would scan the package and with the Rabbit and the Rabbit

would confirm that the package was at the correct location. *Id.* Then the driver would take the package to the home or business and go to the next location provided for on the Rabbit. *Id.*

39.     Credentials were used to track drivers' performance. (Exhibit A, ¶ 33). If a package was lost or stolen, there would be a mark against a driver's credentials called a "concession." *Id.* If a driver had too many concessions against his or her credentials, then Amazon could drop the driver. *Id.* Silverstar only employed drivers in the State of Michigan that could drive as delivery drivers for Amazon. Therefore, if Amazon said the driver could no longer deliver Amazon packages, the driver would be fired. *Id.*

40.     The Rabbit had an application that allowed the driver to call Amazon if they experienced any difficulties on the road. (Exhibit A, ¶ 38). Amazon and Silverstar instructed the drivers to use the application and call in when they were on the road.

41.     The Rabbit device was also used to track drivers' progress throughout the day. (Exhibit A, ¶ 40). Upon information and belief, Silverstar dispatchers could access reports generated by Amazon to monitor drivers' progress. Silverstar dispatchers would call the drivers if they were behind pace. *Id.* Often, drivers would struggle with getting access into apartment buildings that were locked or getting into government buildings with security. (Exhibit A, ¶¶ 38 – 40). These extra steps would

11

slow the drivers down and Amazon's expectation software did not account for these real-world slowdowns. *Id.*

42.    Amazon had a policy stating that delivery drivers could not bring any packages back to the warehouse, unless there was an extraordinary undeliverable circumstance. Because of this policy, drivers had to make sure each package was delivered throughout the day. (Exhibit A, ¶ 41). This policy was enforced by Silverstar and by Amazon.

43.    If drivers were behind pace, Silverstar would send "rescue" drivers to help the drivers deliver all of their packages. (Exhibit A, ¶ 17 – 18, 40, 41). Silverstar would call delivery drivers who had completed their routes and instruct them to help the other drivers who had not finished their routes. *Id.* This rescue work was mandatory and therefore drivers could not refuse to perform the work. *Id.* Drivers were required to perform this work, even though they were not compensated for the extra time it took them. *Id.*

44.    Silverstar moved its operation from Brownstown, MI to Hazel Park, MI in October 2017. (Exhibit A, ¶ 45). All of the same pay policies and practices occurred at both locations. *Id.*

45.    Plaintiff Wasilewski stopped working for Silverstar in January 2018 when Silverstar pulled out of the Michigan Amazon warehouses. (Exhibit A, ¶ 46).

One night, a manager called Plaintiff and said, "Silverstar pulled out and took all of the vans back to Chicago, IL" and that Plaintiff no longer had a job. *Id.*

46.     On or near the day after the phone call, Plaintiff Wasilewski checked his online portal and it said that the administration had locked his account. Plaintiff couldn't access any of his time or pay records after they locked him out. (Exhibit A, ¶ 47).

47.     Although drivers were told that they would only work 10 hours a shift, they worked significantly more hours at the same flat rate and they never received time and a half for hours worked in excess of 40 hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS
### FLSA Collective Action Claims Brought Pursuant to 29 U.S.C. § 216(b)

48.     Plaintiff brings the FLSA claims (Counts I-III) in this action as a collective action under 29 U.S.C. § 216(b).

49.     Plaintiff asserts these claims on behalf of himself and on behalf of all similarly situated delivery drivers.

50.     Plaintiff seeks to notify the following employees of their right under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join the action:

> All individuals who worked at any time during the past three years for Defendant Silverstar as delivery drivers out of the Amazon warehouses in Brownstown, MI or Hazel Park, MI.

13

51.     The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of that Act. 29 U.S.C. § 255. As alleged above, Plaintiff's and similarly situated employees' claims arise out of Defendants' willful violations of the FLSA. Accordingly, the Court should require appropriate notice of this action be given to all similarly situated delivery drivers within three years before the filing of this Complaint.

52.     Upon information and belief, Defendant Silverstar has employed many similarly situated delivery drivers during the time period relevant to this action.

53.     The identities of these employees, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

54.     Plaintiff asks this Court to require Defendants to furnish Plaintiff with the contact information of other similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

55.     Collective adjudication is appropriate in this case because the employees who Plaintiff wishes to notify of this action have been employed in the same position as Plaintiff; have performed work similar to that of Plaintiff; have been subject to the same policies and procedures as Plaintiff; and have been subject to compensation practices similar to those which form the basis of Plaintiff's case, including unlawful failure to pay the overtime premiums under the FLSA.

## CLASS ACTION CLAIMS

## Class Action Claims Brought Pursuant to Federal Rules of Civil Procedure Rule 23

56.     Plaintiff hereby repeats and realleges all preceding paragraphs as though full set forth herein.

57.     Plaintiff seeks to certify his state law claims arising under WOWA (Counts IV – IX) as a Federal Rule of Civil Procedure Rule 23 Class Action.

58.     The class which Plaintiff seeks to certify as a Fed. R. Civ. P. Rule 23 Class Action is defined as:

> All individuals who worked at any time during the past three years for Defendant Silverstar as delivery drivers out of the Amazon warehouses in Brownstown, MI or Hazel Park, MI.

59.     A class action under Fed. R. Civ. P. Rule 23 is appropriate because:

A.     The class is so numerous that joinder of class members is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff believes that Defendant Silverstar has employed over 100 delivery drivers during the last three years;

B.     There are questions of law or fact common to the class and those common questions of law or fact predominate over any questions

affecting only individual class members. These common questions of law and fact include, without limitation:

(i)      Whether Defendants jointly employed the Plaintiff and the Class Members;

(ii)     Whether Plaintiff and the Class Members were entitled to the state minimum wage under WOWA;

(iii)    Whether Defendants failed to pay the Class Members at least the state minimum wage for all hours that they worked in violation of WOWA;

(iv)     Whether Plaintiff and the Class Members were entitled to one and one-half times their regular rate of pay for all time worked in excess of 40 hours in a workweek under the WOWA;

(v)      Whether Plaintiff and the Class Members worked hours in excess of 40 hours a workweek; and

(vi)     Whether Defendants failed to pay Plaintiff and the Class Members at one and one-half times their regular rate of pay for all time worked in excess of 40 hours in a workweek in violation of the WOWA.

C.     The Plaintiff and Class Members have been equally affected by Defendants' failure to pay minimum wage and overtime wages making

16

the claims and defenses of Plaintiff typical of those of the Class Members; and

D.      The Class Representatives will fairly and adequately protect the interests of the Class Members because they have a commonality of interest in the subject matter and remedies sought. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions creating a hardship on the Class Members, Defendants, and the Court.

60.      Therefore, a Rule 23 class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

## COUNT I
## Defendant Silverstar - Violation of the Overtime Wage Provision of the FLSA

61.      Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

62.      Plaintiff was an "employee" of Defendant Silverstar, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Silverstar "suffered or permitted" him to work for it.

63.      Defendant Silverstar was Plaintiff's "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Silverstar "suffered or permitted" him to work for it.

17

64.     Defendant Silverstar is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

65.     Defendant Silverstar is a covered employer under the FLSA and is required to comply with the requirements of the FLSA, including the overtime wage provision § 207.

66.     Section 207 of the FLSA requires that employers pay their employees at least one and one-half times their regular rate of pay for hours worked over 40 hours in a workweek.

67.      Plaintiff was not exempt from the overtime wage provision of the FLSA and therefore was entitled to the protections of the statute.

68.     Defendant Silverstar has failed to pay Plaintiff at least the one and one-half times his regular rate of pay for all hours he worked in excess of 40 hours in a workweek in violation of the FLSA.

69.     In addition to compensatory damages for his unpaid wages, Plaintiff is owed liquidated damages in an amount equal to his compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and his reasonable attorney's fees, to be paid by the Defendant Silverstar for its willful failure to pay at least the overtime wage protections for all hours worked in excess of 40 hours in a workweek.

## COUNT II

## Defendant Gold Standard - Violation of the Overtime Provision of the FLSA

70.    Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

71.    Defendant Gold Standard was Plaintiff's joint employer.

72.    Upon information and belief, Defendant Amazon contracted out work through Defendant Gold Standard to oversee delivery drivers who delivered Defendant Amazon's products to Defendant Amazon's customers. In its position overseeing delivery drivers, Defendant Gold Standard either set a number of policies and procedures that it enforced, or enforced a number of Defendant Amazon's policies and procedures.

73.    Upon information and belief, Defendant Gold Standard advertised and recruited for Defendant Silverstar. In its position within the hiring process, Defendant Gold Standard, either formally or as a matter of practice, shared or was allocated power to hire drivers for Defendant Silverstar.

74.    Upon information and belief, Defendant Gold Standard shares human resource employees with Defendant Silverstar. In its human resource position, Defendant Gold Standard, either formally or as a matter of practice, shares or allocates responsibility over functions ordinarily carried out by an employer, such as handling payroll.

19

75.     In this fissured employment scheme, Defendant Gold Standard was not completely disassociated from Defendant Silverstar and Defendant Amazon. This lack of complete disassociation demonstrates that Defendant Gold Standard was a joint employer of Plaintiff and the putative class members with Defendant Silverstar and Defendant Amazon. *See,* 29 C.F.R. § 791.2(a); *Salinas v. Commercial Interiors, Inc.*, 848 F3d 125, 141 (4th Cir. 2017).

76.     Additionally, other courts have acknowledged that intermediaries in this fissured employment scheme can be liable under the FLSA for wage violations. *See e.g., Ali v. Piron, LLC*, No. 17-11012, 2018 U.S. Dist. LEXIS 37108 (E.D. Mich. Mar. 7, 2018) (denying defendant intermediary's motion to dismiss which argued that it was not a joint employer under FLSA and therefore not liable to any unpaid wages under the statute) (Exhibit F); *Perez v. Lantern Light Corp.*, No. 12-01406, 2015 U.S. Dist. LEXIS 69933, 2015 WL 3451268, at *3 (W.D. Wash. May 29, 2015) (stating that where a company has contracted for workers who are directly employed by an intermediary, courts apply a joint employment analysis) (Exhibit J); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.,* No. 11-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (denying defendant's motion for summary judgment because plaintiffs had presented sufficient evidence to create a question of material fact as to the joint employment

status under the FLSA of an intermediary company which staffed Walmart warehouses with workers). (Exhibit G).

77.    Defendant Gold Standard is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

78.    Defendant Gold Standard is a covered employer and therefore is required to comply with the requirements of the FLSA, including the overtime wage requirement § 207.

79.    Section 207 of the FLSA requires that employers pay their employees at least one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

80.    Plaintiff was not exempt from the overtime wage provision of the FLSA and therefore was entitled to the protections of the statute.

81.    Defendant Gold Standard has failed to pay Plaintiff at least one and one-half times his regular rate of pay in violation of the FLSA.

82.    In addition to compensatory damages for his unpaid wages, Plaintiff is owed liquidated damages in an amount equal to his compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and his reasonable attorney's fees, to be paid by the Defendant Gold Standard for its willful failure to pay Plaintiff at least one and

one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

## COUNT III
### Defendant Amazon - Violation of the Overtime Provision of the FLSA

83.    Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

84.    Defendant Amazon was Plaintiff's joint employer. Defendant Amazon contracted out work through subcontracting companies like Defendant Silverstar and Defendant Gold Standard in order to deliver Amazon products to Amazon customers. Defendant Amazon set a number of policies and procedures that it enforced through Defendant Silverstar and Defendant Gold Standard.

85.    In this fissured employment scheme, Defendant Amazon was not completely disassociated from Defendant Silverstar and Defendant Amazon; but rather, formally or as a matter of practice, determined, shared, or allocated the power to direct, control, or supervise Plaintiff and the putative class members, whether by direct or indirect means with Defendant Silverstar and Defendant Gold Standard. Additionally, Plaintiff and the putative class members performed work at Defendant Amazon's warehouse. This demonstrates that Defendant Amazon was a joint employer of Plaintiff and the putative class members. *See,* 29 C.F.R. § 791.2(a); *Salinas v. Commercial Interiors, Inc.*, 848 F3d 125, 141 (4th Cir. 2017); *Ali v. Piron,*

*LLC*, No. 17-11012, 2018 U.S. Dist. LEXIS 37108 (E.D. Mich. Mar. 7, 2018) (Exhibit F).

86.    Defendant Amazon is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

87.    Defendant Amazon is a covered employer and therefore is required to comply with the requirements of the FLSA, including the overtime wage requirement § 207.

88.    Section 207 of the FLSA requires that employers pay their employees at least one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

89.    Plaintiff was not exempt from the overtime wage provision of the FLSA and therefore was entitled to the protections of the statute.

90.    Defendant Amazon has failed to pay Plaintiff at least one and one-half times his regular rate of pay in violation of the FLSA.

91.    In addition to compensatory damages for his unpaid wages, Plaintiff is owed liquidated damages in an amount equal to his compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and his reasonable attorney's fees, to be paid by the Defendant Amazon for its willful failure to pay Plaintiff at least one and one-half

times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

## COUNT IV
## Defendant Silverstar - Violation of the Minimum Wage Provision of the WOWA

92.     Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

93.     Plaintiff was Defendant Silverstar's "employee" as that term is defined by the WOWA, MCL § 408.412.

94.     Defendant Silverstar was Plaintiff's "employer" as that term is defined by the WOWA, MCL § 408.412.

95.     Defendant Silverstar knowingly, intentionally, and willfully failed to pay Plaintiff and the putative class members at least the Michigan minimum wage for all hours worked, in violation of the WOWA, MCL § 408.414.

96.     As a result of Defendant Silverstar's failure to pay Plaintiff the applicable Michigan minimum wage, Plaintiff is entitled to an award of damages, including but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorney's fees pursuant to MCL § 408.419.

## COUNT V

## Defendant Silverstar - Violation of the Overtime Wage Provision of the WOWA

97.     Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

98.     Plaintiff was Defendant Silverstar's "employee" as that term is defined by the WOWA, MCL § 408.412.

99.     Defendant Silverstar was Plaintiff's "employer" as that term is defined by the WOWA, MCL § 408.412.

100.    Defendant Silverstar knowingly, intentionally, and willfully failed to pay Plaintiff and the putative class members at least the Michigan overtime wage for hours worked in excess of 40 hours in a workweek, in violation of the WOWA, MCL § 408.414(a).

101.    As a result of Defendant Silverstar's failure to pay Plaintiff the applicable Michigan overtime wage, Plaintiff is entitled to an award of damages, including but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorney's fees pursuant to MCL § 408.419.

## COUNT VI

## Defendant Gold Standard - Violation of the Minimum Wage Provision of the WOWA

102.   Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

103.   Plaintiff was Defendant Gold Standard's "employee" as that term is defined by the WOWA, MCL § 408.412.

104.   Defendant Gold Standard was Plaintiff's "employer" as that term is defined by the WOWA, MCL § 408.412.

105.   Defendant Gold Standard knowingly, intentionally, and willfully failed to pay Plaintiff and the putative class members at least the Michigan minimum wage for all hours worked, in violation of the WOWA, MCL § 408.414.

106.   As a result of Defendant Gold Standard's failure to pay Plaintiff the applicable Michigan minimum wage, Plaintiff is entitled to an award of damages, including but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorney's fees pursuant to MCL § 408.419.

## COUNT VII

## Defendant Gold Standard - Violation of the Overtime Provision of the WOWA

107.   Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

108.   Plaintiff was Defendant Gold Standard's "employee" as that term is defined by the WOWA, MCL § 408.412.

109.   Defendant Gold Standard was Plaintiff's "employer" as that term is defined by the WOWA, MCL § 408.412.

110.   Defendant Gold Standard knowingly, intentionally, and willfully failed to pay Plaintiff and the putative class members at least the Michigan overtime wage for hours worked in excess of 40 hours in a workweek, in violation of the WOWA, MCL § 408.414(a).

111.   As a result of Defendant Gold Standard's failure to pay Plaintiff the applicable Michigan overtime wage, Plaintiff is entitled to an award of damages, including but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorney's fees pursuant to MCL § 408.419.

## COUNT VIII

## Defendant Amazon - Violation of the Minimum Wage Provision of the WOWA

112.   Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

113.   Plaintiff was Defendant Amazon's "employee" as that term is defined by the WOWA, MCL § 408.412.

114.   Defendant Amazon was Plaintiff's "employer" as that term is defined by the WOWA, MCL § 408.412.

115.   Defendant Amazon knowingly, intentionally, and willfully failed to pay Plaintiff and the putative class members at least the Michigan minimum wage for all hours worked, in violation of the WOWA, MCL § 408.414.

116.   As a result of Defendant Amazon's failure to pay Plaintiff the applicable Michigan minimum wage, Plaintiff is entitled to an award of damages, including but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorney's fees pursuant to MCL § 408.419.

## COUNT IX

## Defendant Amazon - Violation of the Overtime Provision of the WOWA

117.   Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

118.   Plaintiff was Defendant Amazon's "employee" as that term is defined by the WOWA, MCL § 408.412.

119.   Defendant Amazon was Plaintiff's "employer" as that term is defined by the WOWA, MCL § 408.412.

120.   Defendant Amazon knowingly, intentionally, and willfully failed to pay Plaintiff and the putative class members at least the Michigan overtime wage for hours worked in excess of 40 hours in a workweek, in violation of the WOWA, MCL § 408.414(a).

121.   As a result of Defendant Amazon's failure to pay Plaintiff the applicable Michigan overtime wage, Plaintiff is entitled to an award of damages, including but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorney's fees pursuant to MCL § 408.419.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant the following relief:

A.     The actions of Defendants complained of herein be adjudicated, decreed, and declared a violation of Defendants' obligations under the FLSA;

B.     Find that Defendants willfully violated the FLSA and WOWA, and enter judgment in Plaintiff's favor and accordingly against Defendants, jointly and severally;

C.     Certify the federal-law claims in this case as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and require that notice of their right to join this action by filing with this Court written consent to do so be given to all of Defendants' workers who are similarly situated to Plaintiff;

D.     Certify the state-law claims in this case as class action under Federal Rules of Civil Procedure Rule 23 and authorize the right to opt-out of this action be made public;

E.     Declare the rights of the parties and provide commensurate injunctive relief;

F.     Award any compensatory damages due to Plaintiff for any unpaid wages according to the applicable statutes of limitations, pursuant to the FLSA and the WOWA;

G.     Award liquidated damages to Plaintiff equal to the amount of unpaid back wages, pursuant to the FLSA and the WOWA;

H.      Award prejudgment interest with respect to the total amount of unpaid compensation to the extent permitted by applicable law;

I.      Establish a constructive trust, until further order of the Court, consisting of monies improperly withheld by Defendants due to its above-described improper conduct;

J.      Award reasonable attorney's fees and costs to Plaintiff's counsel as allowed by applicable law and statute; and

K.      Award such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

NOW COMES Plaintiff Mitchell Wasilewski, by and through his attorneys, THE LAW OFFICES OF BRYAN YALDOU, PLLC, on behalf of himself and others similarly situated, and hereby demands a trial by jury of the above entitled matter.

/s/ Bryan Yaldou
Bryan Yaldou (P70600)
Elaina S. Bailey (P82461)
LAW OFFICES OF BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
Phone: (734) 692-9200
Fax: (734) 692-9201
bryan@yaldoulaw.com
*Attorneys for Plaintiff*

Dated: July 11, 2018